**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| AARON KYLE THOMAS, | No. 25-CV-3063-CJW-MAR |
| Plaintiff, | |
| vs. | **ORDER** |
| TODD HARLOW, et al., | |
| Defendants.[1] | |

_____

Defendants' February 2, 2026 motions to dismiss for failure to state a claim are before the Court. (Docs. 22 & 23). Under Local Rule 7, plaintiff's resistance was due in 14 days. On March 9, 2026, plaintiff filed an untimely motion for an extension of time to file a resistance. (Doc. 32). On March 30, 2026, the Court granted the motion, giving plaintiff until April 10, 2026, to file a resistance. (Doc. 36). On April 21, 2026, plaintiff filed a second untimely motion for an extension of time to file a resistance. (Doc. 39). On April 22, 2026, the Court granted the motion, giving him until May 4, 2026, to file a resistance. (Doc. 40). On May 19, 2026, plaintiff filed an untimely resistance. (Doc. 41). He also filed an untimely motion to amend his complaint. (Doc. 42).[2] The Court **grants** the motions to dismiss (Docs. 22 & 23) and **dismisses with prejudice**

---

[1] The three Sioux City Police Department ("SCPD") officers, Detective Jordan Burns, Captain Bertrand and Officer Sean Mendlik (the "city defendants"), are represented by one attorney; the two Woodbury County Jail administrators, Captain Todd Harlow and Lieutenant Lee Blanchard (the "county defendants"), are represented separately by another. The Court refers to the "city defendants" and the "county defendants" in the rest of its Order to distinguish the two when necessary.

[2] The Court observes that, although plaintiff's resistance and motion to amend are dated April 22, 2026, the envelope in which he mailed them is post-marked May 7, 2026. (Doc. 42, at 3).

plaintiff's final remaining claim. The Court also **denies** plaintiff's motion to amend. (Doc. 42).

## I. *PROCEDURAL AND FACTUAL HISTORY*

As the Court previously summarized the procedural and factual history of this case in its Initial Review Order and February 18, 2026 Order, (Docs. 2 & 31), the Court merely highlights the key filings and facts here.

On October 31, 2025, plaintiff filed a Title 42, United States Code, Section 1983 complaint, naming Sioux City Police Department ("SCPD") officers and administrators at the Woodbury County Jail as defendants. (Doc. 1-1, at 1, 3, 6). In his complaint, plaintiff asserted that after he was arrested and brought to the Woodbury County Jail on May 12, 2024, defendants used excessive force on him. (*Id.*, at 4). More specifically, he alleged that as many as twelve officers utilized an arm bar and head tilt; pinned him against the wall face-first causing him to hit his head on the wall; picked him up by his wrists and arms causing his shoulders to pop out of their sockets; slammed him on the floor stomach-first causing him to hit his head on the floor and his shoulders to again pop out of their sockets; placed knees on his neck, back, legs, and feet with the knee on his neck preventing him from breathing and causing him to black out; and inserted fingers and a thumb into his anus. (*Id.*, at 4-5). He also alleged that he blacked out several times following those uses of force and believed "the tra[u]ma to the head and body, along with the physical mental and emotional damage led to several s[eiz]ures[.]" (*Id.*, at 5).

While this alleged conduct was occurring, plaintiff stated that he "requested that they all turn on their body cams and the cell surv[eill]ance." (*Id.*, at 4). Although plaintiff claimed that the jail administrators "did not respond" to his request, plaintiff also claimed that "everything [was] recorded on video/audio surv[eilla]nce via," among other items, "[p]olice officer[']s [b]ody [c]ameras" and "Woodbury County Jail

2

[c]ameras (BodyCams) (holding cell surv[eilla]nce cams) (Booking station Cameras)[.]" (*Id.*, at 4, 6).

On November 24, 2025, the Court allowed plaintiff's excessive force claim to proceed past initial review but dismissed all other claims. (Doc. 2, at 22–23). On February 18, 2026, the Court issued an order, (Doc. 31), ruling on several of plaintiff's motions following the Court's initial review order including motions to amend complaint and a motion to compel documents which reference "audio, video, bodycams," "complete and total security audio and video," and "complete body cam footage audio and video." (Doc. 12, at 2; Doc. 15, at 1). In the order, the Court denied plaintiff's motions to amend and motion to compel documents as well as various other motions. (Doc. 31, at 18–19). On February 2, 2026, defendants filed the instant motions to dismiss for failure to state a claim. (Docs. 22 & 23). The county defendants provided the Court with body camera videos from Officers Steve Pickering and Rodney Schroeder in support of their motion as well as declarations from both officers. (Docs. 22-2 & 22-3).[3]

Plaintiff has filed three motions for extensions of time to file a resistance to the motions to dismiss. (Docs. 32, 34, 39). On April 22, 2026, the Court granted plaintiff's third motion for extension of time and gave plaintiff until May 4, 2026, to respond to defendants' motions. (Doc. 40). As of the date of filing, plaintiff has not filed a resistance.

## II. MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

Before addressing the relevant legal standards, the Court considers the appropriate procedural posture here. "Ordinarily, if the parties present, and the court considers,

---

[3] The video titled "Thomas,_aaron-10" the Court understands to be the body camera video from Officer Pickering and the video titled "Tw1-Thomas,_Aaron" to be the body camera video from Officer Schroeder. Because these videos are not on the docket, the Court refers to them as "Pickering Body Cam" and "Schroeder Body Cam" in the rest of the Order.

matters outside of the pleadings, a Rule 12(b)(6) motion must be treated as a motion for summary judgment." *Shank v. Carleton Coll.*, 232 F.Supp.3d 1100, 1108 (D. Minn. 2017) (citing Fed. R. Civ. P. 12(d)). At the same time, "Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or [in] opposition to the motion." *Missouri ex rel. Nixon v. Coeur D'Alene Tribe*, 164 F.3d 1102, 1107 (8th Cir.) (alteration in original). Rather, "the [c]ourt may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment." *Powers v. City of Ferguson*, 229 F.Supp.3d 894, 899–90 (E.D. Mo. 2017) (citing *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n. 4 (8th Cir. 2003)). "Documents necessarily embraced by the pleadings include those whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading." *Whitten v. City of Omaha*, 199 F.Supp.3d 1224, 1230 (D. Neb. 2016) (citing *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012)). They also include public records. *Powers*, 229 F.Supp. at 899 (citing *Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007)). Likewise, "[a] district court may consider documents on a motion to dismiss where . . . the plaintiff's claims are based solely on the interpretation of the documents and the parties do not dispute the actual contents of the documents." *Jenisio v. Ozark Airlines, Inc., Ret. Plan,* 187 F.3d 970, 972 n.3 (8th Cir. 1999).

Courts have found that when a complaint references a material but does not include it, that material is "embraced by the complaint." *Whitten*, 199 F.Supp.3d at 1231 (finding that defendants attaching the challenged affidavit and application for search warrant was proper because that document was embraced by the complaint and public records); *Powers*, 229 F.Supp. at 899 (finding that when plaintiffs attached a copy of a report quoted in their complaint in their resistance, that report was embraced by the

4

complaint); *Mattes*, 323 F.3d at 697 n.4 (finding the contract that plaintiff contended had been breached and a note with other alleged contractually-binding language admitted at the hearing on the motion to dismiss were both embraced by the complaint). "Although the plaintiff normally must supply any material that its complaint relies on, if plaintiff does not do so, a defendant may. *Whitten*, 199 F.Supp.3d at 1230 (citing *BJC Health Sys. v. Columbia Cas. Co.*, 348 F.3d 685, 688 (8th Cir. 2003)) (permitting consideration of documents supplied by defendants that were embraced by the complaint and public records only). At the same time a document "offered, not for the fact of its filing, but for the truth of the facts asserted in it" is not properly considered at the motion to dismiss stage. *Id.* at 1231.

Here, the Court finds that the two body camera videos are embraced by the complaint and thus the Court can consider them at the motion to dismiss stage. Plaintiff does not dispute the validity of the body camera videos, and, in fact, stated that the entire incident that gives rise to his claim was captured on body camera video at his request. He also requested body camera footage in his motion to compel production of documents and referenced it in his second motion for leave to file an amended complaint, further suggesting that he does not dispute the validity of the body camera videos. (Docs. 12 & 15). Instead, the real dispute here is the Court's interpretation of those videos. The declarations, however, are not embraced by the complaint, but appear to be offered for the truth of the facts asserted in them. For that reason, the Court does not consider the declarations. Thus, setting aside the declarations, the Court does not convert defendants' motions to dismiss into motions for summary judgment and instead proceeds to consider defendants' motions as originally filed.

### III. *LEGAL STANDARDS*

The Court also laid out the relevant standards for a 1983 claim based on excessive force in its Initial Review Order and February 18, 2026 Order. (Docs. 2 & 31). Because

the Court is now applying them to evaluate defendants' motions to dismiss, the Court includes them again in their entirety, as well as the standard for a motion to dismiss.

### A. 12(B)(6) Motion to Dismiss Standard

Before filing an answer, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court must also draw "all reasonable inferences from the complaint . . . in favor of the nonmoving party." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Plausibility is not equivalent to probability, but it is something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "The question . . . is not whether [a plaintiff] might at some later stage be able to prove [its claims]; the question is whether [a plaintiff] has adequately asserted facts (as contrasted with naked legal conclusions) to support his claims." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1129 (8th Cir. 2012).

### B. Section 1983 Standard

Title 42, United States Code, Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

6

immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, Title 42, United States Code, Section 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [Section] 1983'—for [Section] 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, Section 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (stating that Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred."); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means Section 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under Section 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### C. Excessive Force Standard

Under Supreme Court precedent regarding prisoners, the Eighth Amendment forbids unnecessary and wanton infliction of pain. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Several factors are considered to determine what constitutes the unnecessary and wanton infliction of pain.

"[W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishment Clause, the core

7

judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); *see Wilkins v. Gaddy*, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L.Ed.2d 995 (2010). This inquiry turns on "such factors as the need for the application of force, the relationship between the need and the amount of force that was used, and the extent of injury inflicted," from which "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078. The word "sadistically" is not surplusage; "'maliciously' and 'sadistically' have different meanings, and the two together establish a higher level of intent than would either alone." *Howard v. Barnett*, 21 F.3d 868, 872 (8th Cir. 1994).

*Jackson v. Gutzmer*, 866 F.3d 969, 974 (8th Cir. 2017). Importantly:

This is a different and less protective test than the Fourth Amendment standard that applies to "a free citizen's claim that law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' of his person." *Graham v. Connor*, 490 U.S. 386, 388, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989).

*Burns v. Eaton*, 752 F.3d 1136, 1139 (8th Cir. 2014). *See Webster v. Saint Louis Cnty.,* 135 F.4th 614 (8th Cir. 2025) (holding that even pretrial detainees, though, "must allege that the official used more than a *de minimis* amount of force or that the use of force was repugnant to the conscience of mankind.").

Although proving excessive force is more onerous in the prisoner context, courts may not dismiss a claim simply because the plaintiff did not suffer a "significant" injury.

[T]his Court rejected the notion that "significant injury" is a threshold requirement for stating an excessive force claim. The "core judicial inquiry," we held, was not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." 503 U.S. at 7, 112 S. Ct. 995; *see also Whitley v. Albers*, 475 U.S.

312, 319–321, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986). "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." *Hudson*, 503 U.S. at 9, 112 S. Ct. 995; *see also id.*, at 13–14, 112 S. Ct. 995 (Blackmun, J., concurring in judgment) ("The Court today appropriately puts to rest a seriously misguided view that pain inflicted by an excessive use of force is actionable under the Eighth Amendment only when coupled with 'significant injury,' *e.g.*, injury that requires medical attention or leaves permanent marks").

This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. *Id*. at 7, 112 S. Ct. 995 (opinion of the Court). "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Ibid*. (quoting *Whitley, supra*, at 321, 106 S. Ct. 1078). The extent of injury may also provide some indication of the amount of force applied. As we stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." 503 U.S. at 9, 112 S. Ct. 995.

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

## IV.   ANALYSIS

As stated, plaintiff alleges officers pinned him and hit his head on the wall, lifted his arms and popped his shoulders out of their sockets, slammed his head on the cement floor, jumped on his back, kneed him in the neck and back, impeded his breathing such that he blacked out, and sexually assaulted him. (Doc. 1-1, at 5–6). The county defendants respond that "[p]laintiff's [c]omplaint fails to allege a plausible claim for relief and fails to set forth an underlying violation of [p]laintiff's constitutional rights." (Doc. 22-1, at 3). Specifically, the county defendants argue, in part, that "[t]he body camera videos blatantly contradict [p]laintiff's version of events." (*Id.*, at 7). Because "[p]laintiff's version of events is simply not true[;] [p]laintiff's claim of excessive force

9

should be dismissed because he fails to allege a plausible claim for relief." (*Id.*, at 8). The city defendants respond that plaintiff "does not identify any SCPD officer who participated in the alleged assault." (Doc. 23-1, at 3). More specifically, the city defendants point out that plaintiff "makes general allegations of brutality during and after his booking process, but he never actually states which, if any, of the SCPD [d]efendants committed any tortious conduct. Accordingly, his [c]omplaint fails to state a plausible claim against these defendants." (*Id.*, at 6). Because plaintiff "has not alleged any particular conduct against" the city defendants, they ask this Court to dismiss the complaint.

Here, the Court finds the two body camera videos determine the outcome. First, the Court finds no SCPD officers present during the alleged use of excessive force. Each of the uniformed officers on the video at the Woodbury County Jail are wearing a black uniform or tan and green uniform with a "Woodbury County Sheriff" patch on the upper left and right sleeves. *See, e.g.*, (Schroeder Body Cam, at :30–:34 (showing the uniforms of the officers inside the holding cell with plaintiff)). The black uniforms, likewise, have a large patch with "SHERIFF" written on them across the top of their backs. (*Id.*) An unnamed jail employee tells plaintiff, in fact, "We're not the people that brought you in. We work here. We don't – we work- with them, we do not work for them." (Pickering Body Cam, at 1:23–1:30). Thus, the Court agrees with the city defendants that because plaintiff's complaint does not specifically identify SCPD Detective Burns, Captain Bertrand, or Officer Mendlik as present at the Woodbury County Jail on May 12, 2024, and does not specifically articulate which of the uses of excessive force were perpetrated by any of them, plaintiff has not stated a claim upon which relief can be granted. Rather, the Court finds that the city defendants simply were not present, as verified by the body camera videos, and plaintiff's claim as to the city defendants is **dismissed.**

Second, the Court finds that the videos belie the use of excessive force by the county defendants alleged by plaintiff. Plaintiff's hands are handcuffed behind his back and he is not wearing a shirt at the beginning of the body camera videos. (Pickering Body Cam, at 0:00). After plaintiff is non-cooperative during intake, Officer Pickering walks defendant to a holding cell; Officer Pickering has his hand on plaintiff's upper left arm while doing so. (*Id.*, at 2:52–3:24). Inside the holding cell, another officer explains to plaintiff, "Your shorts have a string in 'em. We just have to get your shorts. We're going to give you a jumpsuit to wear, and then we're gonna leave." (*Id.*, at 6:16–:21). Officers then lower plaintiff onto the floor, where he ends up on his stomach with his knees tucked up and his face turned to the side. (*Id.*, at 6:40–:45). While lowering plaintiff to the floor, officers place their hands on the back of his head, his arms, and his legs. (Schroeder Body Cam at 3:20–:25). An officer again explains, "We're getting the shorts because they have a string in them." (Pickering Body Cam, at 7:18–:19). Then an officer removes plaintiff's shorts, leaving plaintiff's underwear on. (Pickering Body Cam 7:26–:29; Schroeder Body Cam at 3:40–4:14). After readjusting plaintiff's handcuffs again behind his back, officers leave plaintiff in the cell. (Pickering Body Cam 8:19–:37). Plaintiff is yelling and speaking with officers throughout the interaction. (*Id.*, at 6:40–8:37).

In reviewing the videos, the Court did not see plaintiff's head slammed into the floor, his arms pulled out of their sockets, any officer's knees on plaintiff at any place on his body including his neck, or any officer come into contact with plaintiff's anus. The Court also did not see plaintiff black out or have a seizure; as plaintiff continues screaming and speaking throughout, it seems unlikely he ever passed out and suffered a seizure. At most, six members of the Woodbury County Jail staff are in the holding cell with plaintiff. *See* (Schroeder Body Cam, at :30–:32 (showing Officer Schroeder and another officer outside of the cell and four officers inside the cell)). Furthermore, while

11

plaintiff's head is close to the wall, *see, e.g.*, (Schroeder Body Cam at 2:31), the county defendants do not slam his head into the wall, and plaintiff remains lying on the floor of the cell when the officers leave. At that point, plaintiff is moving his hands, making it unlikely that his arms were popped out of their sockets. (Schroeder Body Cam, at 5:12–:15).

For those reasons, the Court finds that, even considering what the body camera videos do show, such facts do not make plaintiff's claim facially plausible. Rather, the county defendants used a de minimus amount of force which was good-faith effort to maintain or restore discipline. More specifically, they used the minimum amount of force necessary to remove plaintiff's shorts, which contained a drawstring and were not allowed inside the jail for plaintiff and the other inmates' safety, and which plaintiff would not remove himself. Plaintiff's assertions of additional force do not appear in the videos and do not save plaintiff's claim of excessive force here. Thus, plaintiff has failed to state a claim for which relief can be granted, and plaintiff's claim against the county defendants is also **dismissed**.

## V.     MOTION TO AMEND

Plaintiff seeks leave to amend his complaint. (Doc. 42). Ordinarily, leave to amend is to be freely granted. *Clayton v. White Hall Sch. Dist.*, 778 F.2d 457, 460 (8th Cir. 1985). If the amendment would be futile, however, the Court is permitted to deny plaintiff's leave to amend. *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018). "An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." *Mt. Hawley Ins. v. City of Richmond Heights*, 92 F.4th 763, 769 (8th Cir. 2024). Since *Burnett*, the Iowa Supreme Court has allowed a common law claim of assault to proceed. *White v. Harkrider*, 990 N.W.2d 647, 656–57 (dismissing the Iowa constitutional tort claims but allowing the civil assault claim to proceed). A federal court in Iowa has done the same with common law assault and

battery charges. *Boggess v. City of Waterloo*, No. C23-2057-LTS-MAR, 2024 WL 3928889, at \*12 (N.D. Iowa Aug. 23, 2024) (remanding the case back to state court). *But see Klum v. City of Davenport*, No. 3:23-cv-00043-RGE-WPK, 2024 WL 2880640, at \*16 (S.D. Iowa May 30, 2024) (finding that when the source of law identified in the pleading was article I, section 8 of the Iowa constitution, amendment to a common law assault claim was too late at the summary judgment stage).

Here, plaintiff seeks leave to amend to expand on his claims and to add as defendants state ombudsmen. Any amendment here would be futile. The elaboration on his claims do nothing to refute the video evidence that renders his claims meritless. Moreover, he has no basis for a claim against ombudsmen. Therefore, the Court finds that an amendment would be futile and, given that, leave to amend is denied. (Doc. 42).

## VI. CONCLUSION

For those reasons, defendants' motions to dismiss are **granted**. (Docs. 22 & 23). Plaintiff's final remaining claim of excessive force is **dismissed with prejudice**. Judgment will enter in favor of defendants. The Clerk of Court is directed to close this case. Plaintiff's motion to amend (Doc. 42) is **denied**.

**IT IS SO ORDERED** this 19th day of May, 2026.

_____
C.J. Williams, Chief Judge
United States District Court
Northern District of Iowa

13